J-A25009-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| WELLS FARGO BANK, N.A., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD W. LOCKHART, SR. AND SANDRA LOCKHART A/K/A SANDRA M. LOCKHART, | : | |
| | : | |
| Appellants | : | No. 3011 EDA 2014 |

Appeal from the Order entered September 25, 2014,
Court of Common Pleas, Chester County,
Civil Division at No. 2013-08544

BEFORE: DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 20, 2015**

Ronald W. Lockhart, Sr., and Sandra Lockhart a/k/a Sandra M. Lockhart (together, "the Lockharts") appeal from the September 25, 2014 order entered by the Chester County Court of Common Pleas granting the motion for summary judgment filed by Wells Fargo Bank, N.A. ("Wells Fargo") in this mortgage foreclosure action. Upon review, we reverse and remand for further proceedings.

The facts and procedural history of this case are as follows. On March 26, 2007, the Lockharts borrowed $1,400,000 from World Savings Bank, F.S.B. ("WSB"). The Lockharts executed and delivered a promissory note and a mortgage securing payment of the note, the latter of which WSB duly

---

*Former Justice specially assigned to the Superior Court.

recorded, on a three-acre property and residence located at 687 Sugartown Road, Malvern, Pennsylvania ("the property").

On December 31, 2007, WSB became Wachovia Mortgage, F.S.B. ("Wachovia").[1] On November 1, 2009, Wachovia became Wells Fargo Bank, Southwest, National Association ("Wells Fargo SW"). On that same date, Wells Fargo SW merged with Wells Fargo.

On August 29, 2013, Wells Fargo filed a complaint in mortgage foreclosure, alleging therein that the Lockharts had defaulted on the loan by failing to make the requisite biweekly payments of principal and interest due on February 25, 2013. According to the complaint, as of August 13, 2013, the Lockharts owed $1,547,368.94. Wells Fargo attached to the complaint documents confirming its succession by merger from WSB, a copy of the original note, and a legal description of the property.

On September 18, 2013, the Lockharts filed a pro se answer wherein, in relevant part, they admitted the chain of succession of the companies from WSB to Wells Fargo and that they executed and delivered the promissory note and mortgage, in the recorded amount, in favor of WSB. The Lockharts denied, however, that Wells Fargo had standing to bring the action in mortgage foreclosure. Further, the Lockharts denied that they

---

[1] This name change followed the merger of WSB's parent company, Golden West Financial Corporation, with Wachovia Corporation, which occurred on October 1, 2006 – prior to the creation of the debt between the Lockharts and WSB.

defaulted on the loan, stating that they sent six checks, which Wells Fargo cashed, between March 7 and June 6, 2013, and that Wells Fargo returned to the Lockharts six checks that they had sent between June 11 and August 15, 2013. Lastly, the Lockharts contended that Wells Fargo's failure to comply with their qualified written request ("QWR"),[2] in which they requested documentation to verify the debt, resulted in Wells Fargo's inability to prove that it was a holder of the note in due course pursuant to the Uniform Commercial Code.

On June 26, 2014, Wells Fargo filed a motion for summary judgment, asserting that the Lockharts effectively admitted all necessary allegations, that Wells Fargo was the "mortgagee by succession," and that it was entitled to judgment as a matter of law. Motion for Summary Judgment, 6/26/14,

---

[2] Section 2605 of the Real Estate Settlement Procedures Act defines a qualified written request as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B) (bold in the original).

¶¶ 10, 25; *see Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 465 (Pa. Super. 2014) ("The entry of summary judgment in a mortgage foreclosure action is proper "if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount."), *appeal denied,* 112 A.3d 648 (Pa. 2015). Specifically, Wells Fargo stated that the Lockharts' denial that they defaulted on the loan was ineffective, as the sums tendered (and returned) "did not constitute all sums due on the subject loan, and as such, were properly rejected by [Wells Fargo]." Motion for Summary Judgment, 6/26/14, ¶ 13 (citing *Bell Federal Savings and Loan Assn. of Bellvue v. Laura Lanes, Inc.*, 435 A.2d 1284 (Pa. Super. 1981)). Wells Fargo further claimed that the Lockharts only generally denied the averment that they had failed to pay interest on the loan, which must be deemed an admission. *Id.* ¶¶ 19-21; *see also First Wisconsin Trust Co. v. Strausser*, 653 A.2d 688, 692 (Pa. Super. 1995) ("[I]n mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing must be considered an admission of those facts."). Lastly, Wells Fargo stated that the Lockharts admitted that the recorded mortgage was in the specified amount. Motion for Summary Judgment, 6/26/14, ¶ 23. Wells Fargo appended to its motion the affidavit of Erica Marie Sandoval, Vice President of Loan Documentation at Wells Fargo, which stated that Wells Fargo,

"directly or through an agent has possession of the Promissory Note." *Id.* at Exhibit A. It also appended the Lockharts' account history from January 29, 2013 through May 1, 2014; copies of the recorded mortgage, the complaint and the exhibits attached thereto (including a copy of the promissory note), the Act 91 notices sent by Wells Fargo to the Lockharts, and the Lockharts' answer to the complaint; and a document verifying that the Lockharts were not members of the military.

On July 11, 2014, counsel entered an appearance on behalf of the Lockharts. On July 18, 2014, the Lockharts, through counsel, presented a stipulation reached with Wells Fargo for an extension of time for the Lockharts to respond to Wells Fargo's motion for summary judgment, which required the Lockharts to file their response on or before August 25, 2014.

On August 29, 2014, the Lockharts filed a reply in opposition to the motion for summary judgment and a request for an additional extension of time to respond to Wells Fargo's motion for summary judgment. The Lockharts did not include any direct responses to the averments contained in Wells Fargo's motion for summary judgment. Instead, they stated that they had researched the securitization of the loan and that the fraud expert they had retained, Charles K. Lamm, had concerns about Wells Fargo's ownership of the loan.[3] They therefore requested an extension until September 19,

---

[3] "Securitize" means "[t]o convert (assets) into negotiable securities for resale in the financial market, allowing the issuing financial institution to

2014 to complete their response. The Lockharts appended a copy of Mr. Lamm's preliminary report to their reply. On September 2, 2014, the trial court denied the Lockharts' request for an additional extension of time.

On September 8, 2014, Wells Fargo filed a praecipe for determination, seeking a decision on its motion for summary judgment. Despite the trial court's denial of their request for an extension of time, the Lockharts nonetheless filed an additional response to the motion for summary judgment on September 22, 2014, once again challenging Wells Fargo's standing to bring the mortgage foreclosure action, averring that WSB securitized the note. The Lockharts again attached to their response the preliminary report composed by Mr. Lamm in support of their claims. On September 25, 2014, the trial court entered an order and opinion granting Wells Fargo's motion for summary judgment.

On October 22, 2014, the Lockharts filed a timely notice of appeal. On October 23, 2014, the trial court issued an order for the Lockharts to file within twenty-one days a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("1925(b) statement"). The Lockharts filed their 1925(b) statement on November 18, 2014. The trial court issued its responsive opinion pursuant to Pa.R.A.P. 1925(a) on December 16, 2014.

---

remove assets from its books, and thereby improve its capital ratio and liquidity, and to make new loans with the security proceeds if it so chooses." Black's Law Dictionary, securitize, (10th ed. 2014).

- 6 -

On April 2, 2015, Wells Fargo filed in this Court a motion to quash the appeal based upon the Lockharts' alleged untimely filing of their 1925(b) statement. Following our review of the motion and the Lockharts' response thereto, this Court denied the motion in an Order Per Curiam on April 28, 2015.[4]

On appeal, the Lockharts raise two issues for our review:

1. Was summary judgment properly granted when [Wells Fargo] failed to produce clear, definitive proof of its actual ownership of the original WSB [m]ortgage [n]ote as an alleged successor in interest in order to establish that it was the proper real party in interest?

2. Did [Mr. Lamm] raise genuine issues of material fact as to [Wells Fargo's] actual ownership of the WSB [m]ortgage [n]ote as the alleged successor in interest?

The Lockharts' Brief at 3.

We review a decision granting summary judgment according to the following standard:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P.

---

[4] By entering this Order, this Court rejected Wells Fargo's contention that the Lockharts failed to timely file their 1925(b) statement. We therefore decline Wells Fargo's invitation to revisit this question. *See* Wells Fargo's Brief at 8 n.2.

1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013) (citation omitted).

Both of the issues raised by the Lockharts on appeal challenge Wells Fargo's standing to bring the mortgage foreclosure action.[5] The Lockharts contend that their "demand for production of the original WSB [m]ortgage [n]ote combined with Wells Fargo['s] failure to produce the original WSB [m]ortgage [n]ote is sufficient to raise a genuine issue of material fact as [to] the accuracy of Wells Fargo's ownership and possession claims." The Lockharts' Brief at 12-13. According to the Lockharts, Wells Fargo's reliance on its status as the owner of the note by virtue of corporate succession from WSB is insufficient. *Id.* at 13. This is based upon the Lockharts' belief that

---

[5] As the Lockharts include only one argument in support of both issues raised on appeal, we likewise decide them together.

- 8 -

"WSB was a pass through entity only" and securitized the note in question, and the supporting expert opinion of Mr. Lamm. *Id.* at 14 & n.1, 16-17.

The trial court stated that Wells Fargo produced a copy of the original note, which established Wells Fargo's standing to bring the foreclosure action. Trial Court Opinion, 12/16/14, at 4. The trial court further found that by admitting in their answer that Wells Fargo was a successor to WSB, "the Lockharts have failed to put forth any evidence or legal authority to support their contention … that the copy of the note that is attached [to the complaint] is not genuine." Trial Court Opinion, 9/25/14, at 4. With respect to Mr. Lamm, the trial court questioned whether he could be classified as an "expert," as "his conclusion is 'it is my opinion that all these facts … must be proven in a court …[,]' [which] states nothing other than the obvious." *Id.* at 3 n.1.

The law is clear that only "the real party in interest" may prosecute a legal action. Pa.R.C.P. 2002(a). "[T]he mortgagee is the real party in interest in a foreclosure action." *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 619 (Pa. Super. 2014) (citation omitted). Generally, when the original mortgagee company merges with another company, the surviving corporation becomes the mortgagee under the mortgage agreement, as it "succeeds to both the rights and obligations of the constituent corporations," rendering the surviving corporation the real party in interest in a mortgage foreclosure action. *See Park v. Greater Delaware Valley Sav. & Loan*

- 9 -

***Ass'n***, 523 A.2d 771, 775-76 (Pa. Super. 1987); 12 U.S.C.A. § 215a(e).[6]

No assignment or indorsement is necessary to bestow upon the surviving bank the status of the real party in interest to enforce a debt owed to its predecessor. 12 U.S.C.A. § 215a(e). This assumes, however, that the predecessor in interest was at the time of the merger itself entitled to enforce the note (i.e., at the time of the merger, the predecessor corporation was the holder of the note and did not, for example, sell or transfer the loan to another entity).[7] Unless the predecessor in interest has

---

[6] Section 215a(e) of the Bank Act states: "The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, and receiver, and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger, subject to the conditions hereinafter provided." 12 U.S.C.A. § 215a(e).

[7] A note is a "negotiable instrument" governed by the Pennsylvania Uniform Commercial Code. ***Murray***, 63 A.3d at 1265. Wells Fargo contends, and the trial court found, that Wells Fargo is entitled to enforce the note as a "holder in due course," which the PUCC defines as follows:

> **(a) Definition of "holder in due course."**--Subject to subsection (c) and section 3106(d) (relating to

the right to enforce the note, the successor by merger does not acquire the right to enforce the note.  13 P.S. § 3302(c).

The Lockharts contend that Wells Fargo is not a holder in due course, as the original mortgagee, WSB, securitized the loan, and thus WSB was not

---

unconditional promise or order), "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument:

(i) for value;

(ii) in good faith;

(iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

(iv) without notice that the instrument contains an unauthorized signature or has been altered;

(v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and

(vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

13 P.S. 3302(a).

itself a holder in due course when it merged with Wachovia, which then merged with Wells Fargo SW, which subsequently merged with Wells Fargo. Reply in Opposition to Motion for Summary Judgment and Motion to Extend Time to Respond to Motion for Summary Judgment, 8/29/14, ¶ 6; the Lockharts' Brief at 14 & n.1, 16; *see also* 13 P.S. § 3302(c); *supra* n.6. In support of this claim, they presented before the trial court the preliminary report of a fraud expert, Mr. Lamm. After reviewing the note Wells Fargo attached to its complaint, which was identical to the note provided to the Lockharts in response to their QWR, Mr. Lamm stated:

> [C]ontrary to what is alleged[,] that Wells Fargo, as successor-by[-]merger to Wachovia as successor-by[-]merger to [WSB] [has] any exclusivity [sic][, Wells Fargo] is without authority over the [Lockharts'] loan. … [B]ased on the transfer from Wachovia [] to Wells Fargo[,] [the note in Wells Fargo's possession] should have revealed a transition stamp identified on the left side of the document, to include twelve digits displayed vertically, one letter character and eleven numeric digits, as identifying numbers. The first four digits to be the month and year, the sixth digit would be a letter followed by five additional numeric digits, the end two digits identifying the order of the page being numbered if the note was an original. This fact would indicate that the "note" offered in response to the [Lockharts'] QWR could not have been an actual true copy[.]

Reply in Opposition to Motion for Summary Judgment and Motion to Extend Time to Respond to Motion for Summary Judgment, 8/29/14, at Exhibit A p.5.

Although the trial court was critical of Mr. Lamm's report, it did not find that the report or his opinion, quoted above, was inadmissible.[8]  **Cf. Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 194 (Pa. Super. 2013) (indicating that prior to ruling upon a motion for summary judgment, the trial court can, in its discretion, deem expert testimony inadmissible), *appeal denied*, 96 A.3d 1029 (Pa. 2014).  Furthermore, although Wells Fargo appended to its motion for summary judgment the affidavit of Erica Marie Sandoval, Vice President of Loan Documentation at Wells Fargo, stating that Wells Fargo "directly or through an agent has possession of the [p]romissory [n]ote," this is insufficient to permit the entry of summary judgment.  **See Murray**, 63 A.3d at 1267 ("Pennsylvania courts long have disapproved of trial by affidavit. Moreover, testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury.") (citation omitted).

---

[8]  In its responsive brief, Wells Fargo contends that Mr. Lamm's preliminary report was inadmissible pursuant to Pa.R.E. 702 and 703.  Wells Fargo's Brief at 25-28.  However, "[i]t is well established in this Commonwealth that the decision to admit or to exclude evidence, including expert testimony, lies within the sound discretion of the trial court.  **Ramalingam v. Keller Williams Realty Grp.**, __ A.3d __, 2015 WL 4927797, *9 (Pa. Super. Aug. 18, 2015) (emphasis omitted) (quoting **Ettinger v. Triangle–Pac. Corp.**, 799 A.2d 95, 110 (Pa. Super. 2002), *appeal denied*, 815 A.2d 1042 (Pa. 2003)).  As it is for the trial court, not this Court, to rule upon the admissibility of evidence in the first instance, and the trial court did not find Mr. Lamm's report or the opinion in question to be inadmissible, this argument fails.

The evidence of record, viewed in the light most favorable to the Lockharts, contradicts the trial court's conclusions that the Lockharts "failed to put forth any evidence … to support their contention … that the copy of the note that is attached [to the complaint] is not genuine," and that the note attached to the complaint "clearly established [Wells Fargo's] standing to bring the action in foreclosure." Trial Court Opinion, 9/25/14, at 4; Trial Court Opinion, 12/16/14, at 4. The Lockharts have raised a genuine issue of material fact with regard to Wells Fargo's standing to enforce the loan. The question of standing is essential to Wells Fargo's ability to bring the action in mortgage foreclosure.[9]

On remand, Wells Fargo is required to prove that it is the holder of the note. This can be accomplished by either producing the original note or by establishing the chain of possession of the note from WSB to Wells Fargo. *See Murray*, 63 A.3d at 1267-68.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[9] Without citation to authority, Wells Fargo states that the Lockharts' admission that they made pre-foreclosure payments on the mortgage to Wells Fargo constitutes a "significant and dispositive admission[][.]" Wells Fargo's Brief at 15. Our research reveals no case law that precludes a party from challenging a plaintiff's standing to bring a mortgage foreclosure action simply because the party made payments to the plaintiff on the mortgage. Nor is there any case or statutory support for the conclusion that an admission by the defendant that he/she made payments to the plaintiff on the mortgage prior to the foreclosure action is "dispositive" of a plaintiff's standing to bring a mortgage foreclosure action.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015